UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KERRY R. HICKS,                    )      CASE NO.  1:09mc07
                                   )
              Plaintiff,           )
                                   )
        vs.                        )      JUDGE SARA LIOI
                                   )
THE CADLE COMPANY, et al.,         )
                                   )
              Defendant.           )      **ORDER**
                                   )      [Resolving Docs. 71, 84]
                                   )

        This matter comes before the Court on the motions (Docs. 71, 84) of Defendant

Daniel Cadle ("Cadle"), the judgment debtor, to quash writs of execution issued by Plaintiff

Kerry Hicks ("Hicks") as the judgment creditor of a judgment entered by the United States

District Court for the District of Colorado and certified in this Court. (Doc.1.)

**I. Background**

        Hicks has filed numerous praecipes for writs of execution in this matter in order

to collect on the judgment he received in the District Court in Colorado. (Docs. 59, 60, 82, 83.)

The two praecipes that are the subject of Cadle's motions to quash are those filed February 11,

2011 (Doc. 60) and March 30, 2011 (Doc. 83). The writs identified in the February 11, 2011

praecipe have been served, and each writ has been fruitless and has produced none of Cadle's

assets. The Court has withheld the March 30, 2011 praecipe from service pending its ruling on

the motions to quash and attendant briefing from the parties. *See* Doc. 87. The Court also

withheld a praecipe filed by Hicks on March 10, 2011, which had not yet resulted in the service

of writs of execution, until it could rule on this issue, though Cadle did not challenge that

praecipe. *Id.*

Cadle challenged the February 11 and March 30 praecipes on the basis of the assets they sought to reach. The first praecipe identifies the property to be seized as "the goods, chattels, lands and tenements in your district belonging to Daniel C. Cadle," and specifies in the Marshal's form that the property sought is "[s]tock and other assets." (Docs. 60, 60-2.) The second praecipe provided a much longer definition of the assets included:

> (a) all shares, interests, participations or other equivalents (however designated) of capital stock of any corporation, (b) all equivalent ownership interests in any limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, joint ventures, associations, companies, trusts, trust companies, land trusts, business trusts or other organizations (other than corporations), whether or not legal entities, including partnership interests and membership interests, (c) all warrants, rights or options to purchase or other arrangements or rights to acquire any of the foregoing, and (d) all bonds, certificates, powers, agreements and other instruments or documents evidencing, representing, or in any way conferring rights in respect of any of the foregoing.

(Doc. 83-2 at 2.)

Cadle's two motions are nearly identical despite this expanded definition provided by Hicks in the March 30 praecipe. In both motions, Cadle focuses upon the argument that the stocks sought by Hicks are not reachable under a writ of execution and are also pledged as security for promissory notes Cadle has given other creditors. He further contends that his interests in limited liability companies and limited partnerships are not stock and are not subject to execution under Ohio law, and he argues that the writs are too vague to be executed by the United States Marshal.

In both motions, Cadle makes passing reference to the fact that the writs were not served in accordance with Ohio law because they did not include proper notice to Cadle both of his right to a hearing and his right to identify property that is exempt from execution. The Court has asked the parties to brief this issue more thoroughly (Doc. 87) and has received both the parties' initial briefs and response briefs.

2

**II. Legal issues**

The Federal Rules of Civil Procedure provide that money judgments are enforced by a writ of execution, the process for which is governed by the procedure of the state where the court is located, except to the extent that a federal statute applies, in which case the federal statute governs. Fed. R. Civ. P. 69(a)(1). Ohio law provides for the issuance of a writ of execution as follows:

> When a judgment creditor files a praecipe for a writ of execution with a clerk of [court] […], the clerk shall issue a writ of execution to the levying officer and cause a notice and a hearing request form to be served upon the judgment debtor. The court, in accordance with division (E) of this section, shall appoint a levying officer who shall immediately and simultaneously execute the writ of execution and serve the notice and the hearing request form upon the judgment debtor.

R.C. § 2329.091(A). The statute then sets forth the substance of the notice and states that "[t]he notice to the judgment debtor shall be in substantially [the same] form." R.C. § 2329.091(B)(1). In addition to the statutory language, the notice must include an attachment that provides the substance of R.C. § 2329.66(A), the statute governing the exemption of property from execution. It must also provide a hearing request form and a self-addressed envelope, postage paid, for the return of that form. Under R.C. § 2329.091(D), a judgment debtor is entitled to a hearing if he returns the hearing request form within the period set forth in the statute.

The record reflects that Hicks provided none of this to Cadle when he had the writs of execution served. The Court is then left with the question of whether the failure to provide notice that would comply with the statutory requirements creates an issue of due process and, if so, whether such issues are or may be overcome by a lack of prejudice to the judgment debtor, in this case Cadle.

## III. Analysis

The Court will first consider the question of whether Cadle's due process rights under the Fourteenth Amendment were violated by the allegedly deficient notice provided by Hicks. It will then take up the question of which property is reachable under the execution statute.

### A. Notice

#### 1. Cadle's argument for deficiency of notice

Having set forth the statutory requirements for notice under Ohio law as well as the history of the revisions of the execution statute, Cadle asserts that Hicks's notice of the service of the writs of execution was deficient, and provides several cases in support of that argument. He begins with a history of the case law that led to the inclusion of a notice requirement in the execution statute. *See Hutchinson v. Cox*, 784 F. Supp. 1339 (S.D. Ohio 1992); *Clay v. Fisher*, 584 F. Supp. 730 (S.D. Ohio 1984). Both opinions held that, without a notice requirement, the execution statute in Ohio was unconstitutional because it provided no protection of judgment debtors' due process rights. Both cases involved factual scenarios in which a seizure of the judgment debtor's property had occurred.

In arriving at the necessity of a notice requirement, the courts in both *Hutchinson* and *Clay* relied upon the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the Supreme Court held that the specific process due was the sum of the consideration of three factors, namely the private interest affected by the official actions; the risk that an individual would be erroneously deprived of his rights or interests and the probable value of additional safeguards; and finally the government's interest, both in terms of the function it

4

seeks to perform because of which due process is an issue, and in terms of the administrative burden created by additional process. *Mathews*, 424 U.S. at 334-35.

Having completed the balancing test, the courts in *Hutchinson* and *Clay* concluded that the interest of the individual was great and the burden on the government was minimal in comparison. In 1994, Ohio amended its statute to include a notice requirement, as set forth above. The statute gives no indication of proper procedure should a creditor fail to comply with the notice requirement.

Cadle suggests that a sort of "strict liability" approach be taken by citing the Ohio Supreme Court's decision in *Roach v. Roach*, 164 Ohio St. 587 (1956), a case involving child support payments as part of a divorce decree. *Roach*, 164 Ohio St. at 587. The court was faced with the question of whether an order for payments of child support over which the trial court retains jurisdiction "must be reduced to a lump-sum judgment as to unpaid and delinquent installments before an execution may be lawfully levied thereunder." *Id.* at 590. Specifically, the court was considering whether the order for installment payments in the case before it was a final judgment upon which an execution could issue. *Id.*

The court quoted the relevant portion of the statute in effect at the time, R.C. § 2329.09, which stated that

> [t]he writ of execution against the property of a judgment debtor issuing from a court of record shall command the officer to whom it is directed, that of the goods and chattels of the debtor he cause to be made the money specified in the writ […]. The exact amount of the debt, damages and costs for which the judgment is entered, shall be indorsed on the execution.

*Roach*, 164 Ohio St. at 590. It then commented that

> [t]he provisions of the execution statute must be strictly construed and followed, and a decree for the payment of money in installments, as differentiated from a lump-sum decree or judgment, requires a factual finding as to the amount still due or owing or at least a mathematical calculation of the amount due at any particular time.

5

*Roach*, 164 Ohio St. at 590-91.

Cadle quotes the *Roach* decision for the limited proposition that an execution statute must be "strictly construed and followed." *Roach*, 164 Ohio St. at 590. While this pronouncement by the Ohio Supreme Court appeared in the *Roach* decision, the decision occurred prior to the revision of the statute to include a notice provision. No question of notice was before the court, nor does discussion of notice appear in the opinion.

Cadle then cites the Sixth Circuit decision in *Revis v. Meldrum*, 489 F.3d 273 (6th Cir. 2007), in which a party secured judgment against the plaintiff and attempted to execute on that judgment by issuing writs for seizure of his real and personal property. *Revis*, 489 F.3d at 277-78. Those writs were served by sheriff's deputies who were accompanied by representatives from the judgment creditor's attorney's firm as well as employees of a moving company. *Id.* at 278. At the time the writs were served, the sheriff's deputies saw to the seizure of the real property by means of the changing of the locks on the residence, as well as the removal of personal items, such as artwork, from the home. *Id.*

The judgment debtor brought an action against all of those involved in the issuance and service of the writs and the seizure of his real property.[1] *Id.* at 280-81. Relevant to this action was his claim against the sheriff's deputy[2] who was in charge of the operation in

---

[1] The judgment debtor did not challenge the seizure of his personal property. *Revis*, 489 F.3d at 282.

[2] In support of his argument that he had not violated the debtor's constitutional rights, the sheriff's deputy cited the Supreme Court's decision in *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285 (1924). *Revis*, 489 F.3d at 284. In that decision, the Court had held that, in the absence of a statutory notice requirement, it was not necessary for a debtor to be given notice of execution on tangible personal property because the judgment against that debtor would suffice to give him notice that execution could be forthcoming. *Id.* (citing *Endicott-Johnson*, 266 U.S. at 288). The Sixth Circuit in *Revis* distinguished the *Endicott-Johnson* ruling on the basis of the difference between tangible personal property and real property, noting that the process due before garnishment of wages was less than the process due before deprivation of property. *Id.* The court ultimately concluded that because the trial in the civil case adjudicated only the civil claims and not the right to seize the debtor's real property in satisfaction of the judgment, no adequate notice had been provided for such a seizure and a constitutional violation had occurred. *Id.* It went on to find that the deputy was entitled to qualified immunity because the right was not clearly established and the deputy was simply serving a writ of execution he believed to be valid. *Id.* at 286.

which the judgment debtor claimed that his due process rights were violated by the lack of notice

of the writs and eventual execution thereof on his real property. *Id.* The district court had found

that the sheriff's deputy was entitled to qualified immunity on the claim, and that a lawful writ of

execution (which the deputy appeared to have) automatically entitled him to take possession of

the judgment debtor's real property. *Id.* at 281.

        In its discussion of the judgment debtor's due process rights, the Sixth Circuit

focused heavily upon the rights at stake in execution upon real property as opposed to personal

property. *Id.* at 281-283. It noted that "[a]n individual's immediate loss of possession of his or

her home plainly has greater adverse consequences than the loss of artwork or even a portion of

an individual's wages." *Id.* at 282. Under the *Mathews* factors, the court found that a strong

possessory interest a debtor has in his real property weighs heavily in favor of providing notice

prior to execution and seizure. *Id.*

        Finally, Cadle relies heavily upon a case decided by the Ohio Second District

Court of Appeals, namely *State v. Lopez*, No. 2002CA81, 2003 WL 328031 (Ohio Ct. App.

2003). In *Lopez*, a criminal case in which the defendant's personal property was seized at the

time of his arrest and was later sold, the criminal defendant alleged that he had not received

notice of the trial court's order that his possessions should be sold and the proceeds applied to

restitution. *State v. Lopez*, No. 2002CA81, 2003 WL 328031 (Ohio Ct. App. 2003). The court

stated that "[a] person deprived of property without an opportunity to be heard is deprived of due

process of law." *Id.* at ¶ 8 (citing *Warren Sanitary Milk Co. v. Bd. of Review, Bureau of Unemp't

Comp.*, 179 N.E.2d 385 (Ohio Com.Pl. 1961). While execution against the defendant's property

was permitted under R.C. § 2929.18(D)(1), it required compliance with Chapter 2329, which in

turn requires notice. *Id.* at ¶ 16. The lack of notice resulted in a deprivation of property without

the opportunity to be heard. *Id.* at ¶ 19. The court reversed and vacated the writ of execution. *Id.*

Interestingly, the court in *Lopez* noted that

> [t]he relevant [execution] statutes contain no provision which governs how a court
> that issues a writ of execution insures that its clerk will provide the judgment
> debtor with the form of notice that R.C. [2329.091]³ prescribes and requires the
> clerk to serve. Ordinarily, a praecipe or order to the clerk endorsed on the writ of
> execution suffices. The writ which the court issued here contains no such order.
> The record does not indicate that the clerk issued the notice to Lopez that R.C.
> [2329.091] requires, and the State does not contend that the notice issued.

*Id.* at ¶ 18. The court's observation implies that service of the praecipe on the judgment debtor

would suffice as notice.

## 2. Hicks's argument for sufficiency of notice

Hicks argues that the notice provided to Cadle was sufficient to put him on notice

of the filing of the praecipes and the issuance of the writs of execution. For the sake of

clarification, that notice, according to Hicks, consisted of personal service of the writs to Cadle's

counsel of record, as well as electronic notification of the praecipes and the writs through the

Court's Electronic Case Filing ("ECF") system, which automatically generates notice of each of

the filings in a case. (Doc. 91 at 2, 5.)

Furthermore, Hicks notes that Cadle suffered no prejudice even if the notice is

found to be insufficient. He points out that none of the entities that responded to the challenged

writs indicated that it held any of Cadle's funds, and therefore no funds were seized as a result of

the challenged writs. He also argues that Hicks has challenged the issuance of the writs and has

---

³ Throughout its opinion, the court in *Lopez* cites R.C. § 2929.091. No such statute exists, and the context of those
citations makes it clear that the court intended to cite to § 2329.091, but had made multiple citations to Chapter 2929
of the Revised Code and simply conflated the citations. The clearest basis for this conclusion is the fact that R.C. §
2929.18(D)(1) clearly cites to Chapter 2329 as the chapter under which a judgment creditor would execute judgment
against the property of a judgment debtor.

argued against execution on the property identified therein. According to Hicks, these facts indicate that Cadle has received notice and has had the opportunity to be heard.

In support of his argument that Cadle has suffered no prejudice and the motions to quash the writs should therefore be denied, Hicks first cites *Weithman Bros. v. Harmon*, No. 3-05-05, 2005 WL 1503951 (Ohio Ct. App. 2005). In *Weithman Bros.*, a judgment debtor's personal property was levied upon and sold by the sheriff on behalf of the judgment creditor, and the judgment debtor attempted to stop the sales by filing a motion to set aside the sale. *Id.* at ¶¶ 2-9. The motion was denied and the funds were distributed to the judgment creditor. *Id.* at ¶¶ 11-12. The judgment debtor then appealed the denial of his motion to set aside the sales, arguing that he had not received statutory notice. *Id.* at ¶ 13. The court specifically acknowledged that there may have been merit to the judgment debtor's assertion that he did not receive statutory notice. *Id.* at 16. Nevertheless, it enumerated the motions the judgment debtor had filed in an attempt to stop the sale of his property, as well as all of the judgment entries entered by the court prior to the sale and mailed to the judgment debtor, and concluded that, regardless of the statutory notice requirements, the notice the judgment debtor received had made him aware of the scheduled sale of his goods, that he had taken advantage of several opportunities to challenge the proceedings, and that the trial court had properly denied his motions. *Id.* at ¶¶ 17-22.

The statute in question in *Weithman Bros.*, R.C. § 2329.13, is part of the same chapter as that at issue in the instant matter, but it addresses the sale of goods on execution. At the end of the section, there is a specific provision for a prejudice analysis in the event that a creditor has failed to provide statutory notice:

> (4)     If the court to which the execution is returnable enters its order confirming the sale of the goods and chattels, the order has both of the following effects:

(a)     The order shall be deemed to constitute a judicial finding as follows:

    (i)     That the sale of the goods and chattels complied with the written notice requirements of division (A)(1)(a) of this section and the public notice requirements of division (A)(2) of this section, or that compliance of that nature did not occur but the failure to give a written notice to a party entitled to notice under division (A)(1)(a) of this section has not prejudiced that party;

    (ii)     That all parties entitled to notice under division (A)(1)(a) of this section received adequate notice of the date, time, and place of the sale of the goods and chattels.

(b)     The order bars the filing of any further motions to set aside the sale of the goods and chattels.

R.C. § 2329.13. In *Weithman Bros.*, the appellate court was reviewing a case in which the trial court had entered an order confirming the sale of goods and chattels, and therefore the prejudice analysis was available both to the trial court and the appellate court. *Weithman Bros.*, 2005 WL 1503951 at ¶¶ 17, 22.

Hicks next cites *Bank One v. DWT Realty, Inc.*, No. 04 MA 206, 2006 WL 4642668 (Ohio Ct. App. 2006), which also involved an execution upon judgment debtors' personal property under R.C. § 2329.13. The judgment debtors in *Bank One* had confessed judgment in their answer to the plaintiff's complaint for judgment on a promissory note, and in so doing had expressly waived their right to notice of execution. *Bank One*, 2006 WL 4642668 at * 1. When the plaintiffs attempted to execute judgment on the debtors' personal property, however, the debtors attempted to stop the execution by arguing, among other things, that the plaintiffs had not provided statutorily sufficient notice of the sale of the property. *Id.* at *2. They were unsuccessful and appealed. *Id.* On appeal, they raised the notice argument, to which the judgment creditor responded by saying that the judgment debtors had suffered no prejudice, and therefore any insufficiency in notice (which they did not deny) was harmless error. *Id.* at *3. The

10

court of appeals agreed: Noting that the statute provided for a prejudice analysis in the event of statutorily insufficient notice, and that the judgment debtors had signed a cognovit note waiving their rights to notice and had included similar language in their answer confessing judgment, the court concluded that they had waived their rights and no prejudice had been asserted or demonstrated. *Id.* at *6.

Hicks has also cited the decision in *Neubert v. Neubert*, No. 11-094, 1986 WL 640 (Ohio Ct. App. 1986), in which the appellant (the former husband) owed child support to the appellee (his former wife), and she obtained judgment against him and issued a writ of execution against one of his vehicles. *Neubert*, 1986 WL 640 at *1. The appellant claimed an exemption and requested a hearing. *Id.* It became clear at the hearing that the appellee had wrongly identified the model year of the vehicle she was attempting to seize, and she later corrected and re-issued the writ, but did not re-issue notice to the appellant. *Id.* The appellant then argued (after various machinations not relevant to this discussion) that the writ was invalid because he had not received proper statutory notice. *Id.*2. The court concluded that, while the appellee had not provided the appellant notice of the second writ, the appellant had known at the time of the exemption hearing that the appellee intended to execute on the truck named in the second writ, and therefore had constructive notice of the writ. *Id.* Further, the court noted that the trial court had given the appellant an opportunity during the exemption hearing to exempt the truck eventually named in the second writ when it became apparent that the appellee intended to name that truck, but he had declined to do so. *Id.* Therefore the court found that the appellant had suffered no prejudice. *Id.*

Similarly, in *City of Columbus v. Capital Data Sys., Inc.*, 186 Ohio App.3d 775 (Ohio Ct. App. 2010), the court held that a failure to provide notice to the judgment debtor

constituted harmless error as the debtor had not suffered prejudice as a result of the lack of notice. *Id.* at ¶ 9. Citing Rule 61 of Ohio's Rules of Civil Procedure, which mirrors Rule 61 of the Federal Rules of Civil Procedure, the court held the error harmless because it did not affect the debtor's substantial rights in that she received a hearing on the garnishment issue, which is the procedural safeguard that the notice requirement is intended to provide. *Id.*

### C. Analysis of notice issue

Despite the extensive citation to case law that the parties have provided, as summarized above, there appears to be no case law precisely on point. The Ohio Supreme Court's indication in *Roach* that execution statutes should be strictly construed and followed, while apparently broadly applicable, had nothing to do with a notice requirement for execution of judgments, and in fact the decision was issued well prior to the amendment of the statute that instituted a notice requirement. The decision in *Revis* involved an actual seizure of real property, not the threat of seizure of personal property or, as in this case, funds. Similarly, the debtor in *Lopez* brought his claims after the seizure and sale of his personal property for which he received no notice.

While Hicks has attempted to provide case law and statutory support for the proposition that a prejudice analysis is appropriate in this instance, the citations he has provided rely upon the statute that governs proceedings later in the execution process, specifically after the sale of seized goods. R.C. 2329.13. On the other hand, two of the cases cited by Hicks and summarized above, namely *Neubert* and *City of Columbus*, while they did not involve the execution statute at issue in the instant matter, turned on a prejudice analysis in which the courts concluded that the debtors were not prejudiced because they had been able to challenge the execution despite the alleged or acknowledged insufficiency of the creditor's notice.

The entities that have responded to Hicks's writs have stated that they hold none of Cadle's assets. A number of the writs have gone unanswered by the entities on which they were served. Some of the writs remain unserved pending the Court's ruling on this issue. In sum, no assets have been located or seized as a result of the challenged writs.

Furthermore, Cadle has been able to challenge the substance of the execution efforts by Hicks: the motions originally filed in this matter to quash the writs of execution raised substantive legal issues about the propriety of levying on the assets Hicks sought by means of the writs. Cadle clearly received notice (at very least electronic notice through the Court's ECF system) and acted upon it in filing his motions to quash, the merits of which the Court is now considering. The notice issue was not one to which Cadle gave great attention or on which he placed any emphasis prior to this Court's prompting briefing.

The Court is satisfied in this matter that Cadle has suffered no prejudice as a result of Hicks's failure to provide sufficient notice as required by R.C. § 2329.091. All of the safeguards that would have existed had Hicks provided statutory notice have been preserved by means of Cadle's motions to quash, and none of Cadle's property has been seized. Having said this, the Court would caution Hicks that, while in these particular circumstances Cadle has not suffered prejudice, this is not to say that a future failure to provide statutory notice would lead to the same result. Hicks has asserted in his briefing that it is "impossible to apply literally statutes governing state procedure to a federal collection action." (Doc. 91 at 3.) He further asserts that he followed the federal rules for filing the praecipes and issuing the writs. The Court would remind Hicks of Rule 69(a)(1) of the Federal Rules of Civil Procedure, which provides that "the procedure on execution […] *must accord with the procedure of the state where the court is located* […]." Fed. R. Civ. P. 69(a)(1) (emphasis added). It is not impossible for Hicks to provide

the notice required under R.C. § 2329.091 (and set forth *in toto* in that section for Hicks's ease of use), and it would behoove him to do so from this point forward.

### B. Additional bases

The Court will next review the bases presented by Cadle in support of his motions to quash other than the sufficiency of notice. Cadle focused his efforts in his motions to quash on the argument that the stocks sought by Hicks are not reachable under a writ of execution and are also pledged as security for promissory notes Defendant has given other creditors. He further contends that his interests in limited liability companies and limited partnerships are not stock and are not subject to execution under Ohio law, and he argues that the writs are too vague to be executed by the United States Marshal. The Court will address these arguments in a different order than that in which Cadle has presented them.[4]

#### 1. Vagueness of writs

Cadle asserts that the writs are overly vague because they do not identify more exactly what property is to be seized or whose property it is. This leaves the Marshal without direction as to whether the property to be seized falls within Ohio's execution statute. He has provided no law to support this theory.

Hicks has responded that this theory is unsupported by law or fact. He notes that the writs clearly identify Cadle as the defendant and Hicks as the party on whose behalf the writs are being served. They also provide as much information as Hicks can provide without serving discovery on the garnishees. Furthermore, the statutes under which execution is performed do not give specific instructions as to the information that must be contained in a writ.

---

[4] Plaintiff argued in his response to the first motion to quash that Cadle cannot challenge the writs because he is not a party to them. However, the case that Plaintiff cites, *Windsor v. Martindale*, 175 F.R.D. 665 (D. Colo. 1997), in inapposite in that it addresses the challenging of a subpoena issued by an opposing party to a third party. The instant matter deals with writs issued for the seizure of a party's property, not subpoenas.

Hicks properly notes that the writs are clear enough that Cadle has been able to identify that stocks are at issue and has objected to their seizure. Furthermore, Hicks is correct that the execution statutes do not itemize the information that must be included in the writs. *See* R.C. § 2329.09. The writs are clear enough as issued that Cadle and the third-party financial institutions can identify the property being seized. This argument is without merit.

### 2.  Stocks not subject to execution

Ohio law provides that the items subject to execution are as follows: "Lands and tenements [ . . . ] and goods and chattels, not exempt by law." R.C. § 2329.01. Cadle claims that the stocks identified in the writs he has moved to quash are not lands, tenements, goods or chattels. He carefully provides the Black's law dictionary definition of each of these words and concludes that stocks are not included in any of the definitions. Again, Cadle does not cite any law to support his position.

This is a specious argument. The law dictionary definitions may not specifically state that "stocks" are among the types of items intended by the words "goods and chattels," but that does not exclude stocks from the scope of those terms. The Ohio Revised Code provision Cadle cites indicates that the property governed by the statute is that which may be subjected to levy and sale. Stocks are certainly saleable items. Furthermore, there is a significant amount of case law in Ohio that discusses the seizure of stocks in the execution of judgments. *See e.g. Black River Lumber & Supply Co. v. Darakis*, C.A. No. 3101, 1981 WL 3912 (Ohio Ct. App. 1981) (in which a stock certificate was seized by the sheriff upon serving the writ of execution); *The Peoples Bank of Wapokoneta, Ohio v. Regula*, No. 2-81-19, 1981 WL 6755 (Ohio Ct. App. 1981) (in which the timing of the sheriff's execution on the judgment-debtor's stock was at issue, but no general question as to the propriety of executing on stock arose).

### 3. Stock pledged to other creditors

15

Cadle next contends that the stock sought by Hicks has been pledged to other creditors in an amount that exceeds the judgment awarded to Hicks. He has attached an affidavit to that effect as well as exhibits. He once again cites no law to support his claim that these funds are not executable.

Hicks responds by suggesting that Cadle intentionally executed promissory notes after Hicks commenced execution of the judgment in Colorado, and signed approximately 150 promissory notes in the month Hicks began those proceedings. Hicks asserts that, even if the stock is already pledged to other creditors (which is not clear at this juncture), this is not a basis for quashing the writs. He notes that Cadle cites no law in support of his proposition that the writs should be quashed, but Hicks likewise cites no law in support of his argument that they should not.

The issue of priority is not one that requires the quashing of a writ of execution. Priority can be argued and determined after the levying of the judgment debtor's property. "The money derived from the sale of property on execution is substituted for the property itself and is distributed among the creditors, including judgment creditors, and holders of outstanding interests or claims, in the order of their priorities." 40 Ohio Jur. 3d Enforcement of Judgments § 285 (citing *Rauh v. Aknovitch*, 59 Ohio St. 483 (Ohio 1899); *Doll v. Barr*, 58 Ohio St. 113 (Ohio 1898); *Ryan v. Root*, 56 Ohio St. 302 (Ohio 1897); *Meier v. First Nat. Bank of Cardington*, 55 Ohio St. 446 (Ohio 1896); *Fidelity & Cas. Co. v. Thumm*, 35 Ohio App. 499 (Ohio Ct. App. 1930); *Miller v. Albright*, 60 Ohio St. 48 (Ohio 1899); *Wright v. Franklin Bank*, 59 Ohio St. 80 (1898)). "Priorities in claims to money resulting from the sale of property on execution are generally settled by an application or motion to the court to distribute the money." *Id.* at § 287 (citing *Douglas v. Wallace*, 11 Ohio 42 (1841)). Cadle's argument is without merit.

16

### 4. Stock in LLC, LP

Cadle argues that his membership interest in limited liability companies and limited partnerships are not stock and are not reachable on execution. He first asserts, as he did with respect to the stock he owned, that interests in limited liability companies and limited partnerships are not specified as subject to execution under R.C. § 2329.01. He then cites R.C. § 1705.19 as support for his position with respect to the limited liability company:

> If any judgment creditor of a member of a limited liability company applies to a court of common pleas to charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest, the court may so charge the membership interest. To the extent the membership interest is so charged the judgment creditor has only the rights of an assignee of the membership interest. Nothing in this chapter deprives a member of the member's statutory exemption.

As for his interest in the limited partnerships, Cadle cites R.C. § 1782.41

> On application to a court of common pleas by any judgment creditor of a partner, the court may charge the partnership interest of the indebted partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor shall have only the rights of an assignee of the partnership interest.

Hicks makes little argument and cites no case law on this point. He suggests that it would prejudice his rights to judgment to require him to file a creditor's bill before he can obtain the property that he alleges Cadle is hiding "throughout his corporate network," and that the delay that would result would give Cadle additional time to hide his assets.

On this issue, Cadle is correct. Ohio law regarding charging orders is as Cadle has indicated with respect to limited liability companies and limited partnerships. While efforts to find Ohio case law addressing whether a judgment creditor may seize a judgment debtor's interest by mean of a writ of execution have proved futile, a North Carolina appellate court has decided the issue, and the statute in North Carolina regarding execution of judgment against a membership interest in limited liability companies is substantively the same as Ohio's statute:

17

> On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest.

N.C. Gen. Stat. § 57C-5-03 (1993). In *Herring v. Keasler*, 563 S.E.2d 614 (N.C. App. 2002), the appellate court reviewed a trial court's decision preventing a plaintiff (the judgment creditor) from having the membership interest of the defendant (the judgment debtor) in a limited liability company seized and sold by means of a writ of execution. The trial court had first temporarily enjoined the plaintiff from proceeding by means of a writ of execution, and had then issued a charging order directing as follows:

> [The defendant's] membership interests in the LLCs [were] to be charged with payment of the judgment, plus interest; the LLCs [were] to deliver to [the plaintiff] any distributions and allocations that [the defendant] would be entitled to receive on account of his membership interests in the LLCs; [the defendant] [was] to deliver to [the plaintiff] any allocations and distributions he would receive; and [the plaintiff] [was] not to obtain any rights in the LLCs, except as those of an assignee and under the respective operating agreement.

*Herring*, 563 S.E.2d at 615. The appellate court affirmed the trial court's judgment and held that the plaintiff could not have the defendant's membership interests sold, noting that "because the forced sale of a membership interest in a limited liability company to satisfy a debt would necessarily entail the transfer of a member's ownership interest to another, thus permitting the purchaser to become a member, forced sales of the type permitted in section 1-362[5] are prohibited." *Id.* at 616.

Similarly, it is difficult to find Ohio case law on a judgment creditor's attempt to seize and sell a judgment debtor's interest in a limited partnership. Logically, given the parallelism between the Ohio statutes providing for a judicial charging order in the case of a judgment creditor's attempting to obtain interests in a limited partnership and in a limited

---

[5] N.C. Gen. Stat. § 1-362 provides for the court to order the debtor's property sold in satisfaction of judgment.

liability company, the treatment of interests in a limited partnership should be the same as that of a limited liability company. The case law in other states bears this out. *See e.g. Evans v. Galardi*, 546 P.2d 313 (Cal. 1976) (finding that, under a state statute substantively similar to Ohio's R.C. § 1782.41 a judgment debtor's interest in a limited partnership is not subject to execution, but may be reached by means of a judicial charging order); *see also 91st St. Joint Venture v. Goldstein*, 691 A.2d 272, 275 (Md. Ct. App. 1997) (providing a discussion of the genesis of charging order statutes as a means of avoiding the sale of partnership interests, which would result in the compulsory dissolution of the partnership).

While the decisions from other states regarding the seizure of interests in limited liability companies and limited partnerships are not binding on this Court, they are instructive. The safeguards created by the requirement of a charging order will protect Cadle's rights and the rights of the others with interests in the entities at issue here, without acting as a barrier to Hicks's rights. Therefore, the Court concludes that Hicks must first seek a judicial charging order in order to reach Cadle's interests in the limited liability companies and limited partnerships Hicks is pursuing.

## IV. Conclusion

In sum, Cadle's motion is GRANTED in part and DENIED in part. Cadle's argument that his due process rights have been violated and that this forms a basis for quashing Hicks's writs is without merit, and the motions are denied in this regard. While notice was not statutorily sufficient, Cadle was not prejudiced thereby, and his motions to quash the writs have been considered by this Court prior to any seizure of his property. That being said, Hicks is once again instructed that he should follow the notice provisions under Ohio law from henceforward,

and that he must re-file with proper notice the praecipes currently being held in abeyance by the Court before the Clerk of Court issues the related writs. (Docs. 82, 83.)

Cadle is incorrect that his stocks cannot be levied upon by means of a writ of execution. He is further incorrect that the writs are overly vague. To the extent that his assets may have been pledged to others, this is an issue that must be resolved after the property has been seized, and does not suffice as a basis for quashing the writs at issue here. These arguments are without merit and the motions are denied in these respects.

Cadle's motion is granted with respect to his arguments that his membership in limited liability companies and his interest in limited partnerships may not be levied upon directly. Hicks may only proceed against those assets by means of a judicial charging order pursuant to R.C. §§ 1705.19 1782.41.

**IT IS SO ORDERED**.

Dated: August 19, 2011

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**